## Staunton.

CARRIE BUCK, BY R. G. SHELTON, HER GUARDIAN AND
NEXT FRIEND, v. DR. J. H. BELL, SUPERINTENDENT
OF THE COLONY FOR EPILEPTICS AND
FEEBLE-MINDED.

November 12, 1925.

1. DUE PROCESS OF LAW—*What Constitutes Due Process of Law.*—An ad-
judication by an impartial tribunal vested with lawful jurisdiction
to hear and determine the questions involved, after reasonable notice
to the parties interested and an opportunity for them to be heard,
fulfills all the requirements of due process of law.

2. VIRGINIA STERILIZATION ACT—*Insane, Idiotic, Imbecile, or Epileptic—
Due Process of Law—Case at Bar.*—The Virginia sterilization act
(Acts. 1924, ch. 394, p. 569) clearly vests the special board of
directors of the State Colony for Epileptics and Feeble-Minded,
after notice according to law, with jurisdiction to hear and deter-
mine the prayer of any petition filed by the Superintendent of the
Colony, for the sexual sterilization of an inmate thereof. In the in-
stant case the proceeding was strictly in conformity with the statute,
and from the final order of the board the inmate appealed to the
circuit court and subsequently to the Supreme Court of Appeals,
alleging that the Virginia sterilization act was repugnant to the
provisions of the State and Federal Constitutions, in that it did not
provide due process of law.

   *Held:* That the act complies with the requirements of due process of
law.

3. VIRGINIA STERILIZATION ACT—*Not a Penal Statute—Purpose of the Act.*—
The act is not a penal statute. The purpose of the legislature was
not to punish but to protect the class of socially inadequate citizens
named therein from themselves, and to promote the welfare of
society by mitigating race degeneracy and raising the average stand-
ard of intelligence of the people of the State.

4. VIRGINIA STERILIZATION ACT—*Insane, Idiotic, Imbecile, or Epileptic—
Cruel and Unusual Punishment.*—The constitutional provision against
cruel and unusual punishment, Virginia Bill of Rights, section 9,
has reference to such bodily punishments as involve torture and are
inhumane and barbarous, and has no application to the Virginia
sterilization act.

5. Virginia Sterilization Act—*Insane, Idiotic, Imbecile, or Epileptic—Equal Protection of the Law—Police Power.*—The Virginia sterilization act (Acts 1924, ch. 394, p. 569) is not unconstitutional as denying the equal protection of the law. The right to enact such a law rests in the police power.

6. Police Power—*Surrender of Police Power.*—The States did not surrender the police power when they enacted the Federal Union, and the exercise of that power the Virginia Constitution provides shall never be abridged.

7. Police Power—*Conflict with the Constitution.*—Where the police power conflicts with the Constitution, the latter is supreme, but the courts will not restrain the exercise of such power, except where the conflict is clear and plain.

8. Police Power—*Fourteenth Amendment.*—Neither the fourteenth amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity.

9. Fourteenth Amendment—*Police Power—Statutes—Reasonable Classification.*—The fourteenth amendment to the Constitution of the United States does not forbid the passage by the legislature of a law which applies to a class only, provided the classification is reasonable and not arbitrary, and applies alike to all persons similarly situated. Whether the classification is reasonable is a question primarily for the legislature. It is presumed to be necessary and reasonable, and the courts will not substitute their judgment for that of the legislature, unless it is clear that the legislature has not made the classification in good faith.

10. Virginia Sterilization Act—*Equal Protection of the Law.*—The Virginia sterilization act does not discriminate against the inmates or the Colony for Epileptics in favor of the feeble-minded outside the Colony, since those outside, if in fact feeble-minded, can, by the process of commitment and afterwards of a sterilization hearing, be sterilized under the act.

11. Virginia Sterilization Act—*Constitutionality of the Act.*—The Virginia sterilization act is based upon a reasonable classification and is a valid enactment under the State and Federal Constitutions.

Error to a judgment of the Circuit Court of Amherst county in a proceeding under the Virginia sterilization act. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*I. P. Whitehead*, for the plaintiff in error.

*Strode & Edmunds*, for the defendant in error.

WEST, J., delivered the opinion of the court.

Carrie Buck, by R. G. Shelton, her guardian and next friend, complains of a judgment of the Circuit Court of Amherst county by which Dr. J. H. Bell, Superintendent of the State Colony for Epileptics and Feeble-Minded, was ordered to perform on her the operation of salpingectomy, for the purpose of rendering her sexually sterile. See part of the Virginia sterilization act copied in the margin.*

After requiring the service of a copy of the petition and notice of the time and place when the special board of directors will hear and act on the petition

---

* The Virginia sterilization act (Acts 1924, chap. 394, p. 569) reads, in part, as follows:

"Whereas, both the health of the individual patient and the welfare of society may be promoted in certain cases by the sterilization of mental defectives under careful safeguard and by competent and conscientious authority; and

"Whereas, such sterilization may be effected in males by the operation of vasectomy and in females by the operation of salpingectomy, both of which said operations may be performed without serious pain or substantial danger to the life of the patient; and

"Whereas, the Commonwealth has in custodial care and is supporting in various State institutions many defective persons who if now discharged or paroled would likely become by the propagation of their kind a menace to society, but who if incapable of procreating might properly and safely be discharged or paroled and become self-supporting with benefit both to themselves and to society; and

"Whereas, human experience has demonstrated that heredity plays an important part in the transmission of insanity, idiocy, imbecility, epilepsy and crime; now, therefore,

"1.   Be it enacted by the General Assembly of Virginia, That whenever the Superintendent of the Western State Hospital, or of the Eastern State Hospital, or of the Southwestern State Hospital, or of the Central State Hospital, or of the State Colony for Epileptics and Feeble-Minded, shall be of opinion that it is for the best interests of the patients and of society

upon the inmate and her guardian, and, if the inmate be an infant, upon the living parents, and giving the inmate the right to be represented by counsel, the act further provides:

"The said special board may deny the prayer of the said petition, or if the said special board shall find that the said inmate is insane, idiotic, imbecile, feeble-minded, or epileptic, and by the laws of heredity is the probable potential parent of socially inadequate offspring likewise afflicted, that the said inmate may be sexually sterilized without detriment to his or her general health, and that the welfare of the inmate and of society will be promoted by such sterilization, the said special board may order the said superintendent to perform or to have performed by some competent physician to be named in such order upon the said inmate, after not less than thirty days from the date of such order, the operation of vasectomy if a male or of salpingectomy if a female; provided that nothing in this act shall be construed to authorize the operation of castration nor the removal of sound organs from the body."

The statute then provides that the special board, the superintendent, the inmate or his committee,

---

that any inmate of the institution under his care should be sexually sterilized, such superintendent is hereby authorized to perform, or cause to be performed by some capable physician or surgeon, the operation of sterilization on any such patient confined in such institution afflicted with hereditary forms of insanity that are recurrent, idiocy, imbecility, feeble-mindedness or epilepsy; provided that such superintendent shall have first complied with the requirements of this act.

"2. Such superintendent shall first present to the special board of directors of his hospital or colony a petition stating the facts of the case and the grounds of his opinion, verified by his affidavit to the best of his knowledge and belief, and praying that an order may be entered by said board requiring him to perform or have performed by some competent physician to be designated by him in his said petition or by said board in its order, upon the inmate of his institution named in such petition, the operation of vasectomy if upon a male and of salpingectomy if upon a female."

guardian or next friend, may appeal from the order of the board to the circuit court, and that any party to such appeal in the circuit court may apply to the Supreme Court of Appeals for an appeal from the final order therein.

On the 23rd day of January, 1924, Carrie Buck was adjudged to be feeble-minded within the meaning of the Virginia statute, and committed to the State Colony for Epileptics and Feeble-Minded. On September 10, 1924, A. S. Priddy, then Superintendent of the Colony, presented to the special board of directors his petition praying for an order that Carrie Buck be sexually sterilized by the surgical operation known as salpingectomy. The hearing was conducted strictly in accordance with the provisions of the statute, and, upon the evidence introduced before them, the board entered the order prayed for. From this order an appeal was taken by Carrie Buck and R. G. Shelton, her guardian and next friend, to the Circuit Court of Amherst county. Upon the record and evidence introduced at the trial in the circuit court, the judgment complained of was entered, from which this appeal was allowed.

These facts, among others, appear from the evidence:

The operation of salpingectomy is the cutting of the fallopian tubes between the ovaries and the womb, and the tying of the ends next to the womb. The ovaries are left intact and continue to function. The operation of vasectomy consists of the cutting down of a small tube which runs from the testicle, without interference with the testicle. These operations do not impair the general health, or affect the mental or moral status of the patient, or interfere with his, or her, sexual desires or enjoyment. They simply prevent reproduction.

In the hands of a skilled surgeon, they are 100 per cent successful in results.

At the time Carrie Buck was committed to the State Colony for Epileptics and Feeble-Minded, she was seventeen years old and the mother of an illegitimate child of defective mentality. She had the mind of a child nine years old, and her mother had theretofore been committed to the same Colony as a feeble-minded person. Carrie Buck, by the laws of heredity, is the probable potential parent of socially inadequate offspring, likewise affected as she is. Unless sterilized by surgical operation, she must be kept in the custodial care of the Colony for thirty years, until she is sterilized by nature, during which time she will be a charge upon the State. If sterilized under the law, she could be given her liberty and secure a good home, under supervision, without injury to society. Her welfare and that of society would be promoted by such sterilization.

The appellant contends that the judgment is void because the Virginia sterilization act is repugnant to the provisions of the State and Federal Constitution (Const. Va., Art. 1, Secs. 9, 11; Const. U. S. Amends. 8, 14) in that—

(a) It does not provide due process of law;

(b) It imposes a cruel and unusual punishment; and

(c) It denies the appellant and other inmates of the State Colony the equal protection of the law.

[1] 1. An adjudication by an impartial tribunal vested with lawful jurisdiction to hear and determine the questions involved, after reasonable notice to the parties interested and an opportunity for them to be heard, fulfills all the requirements of due process of law.

In *Commissioners* v. *Hampton Roads Oyster Co.*, 109

Va. 585, 64 S. E. 1041, Judge Cardwell, speaking for the court, said: "It is very true that 'due process of law' requires that a person shall have reasonable notice and opportunity to be heard before an impartial tribunal before any binding decree or order can be made affecting his rights to liberty or property; but this constitutional safeguard cannot avail appellee upon the uncontradicted facts as to the proceeding before the Board of Fisheries and the Commission of Fisheries touching this controversy. The proceedings were had before the Board of Fisheries and its successor in office, a department of the State government, to whose judgment and discretion the legislature has committed the supervision and control of the natural oyster-beds, rocks and shoals within the waters of the Commonwealth, as well as the oyster industry of the Commonwealth, and made the decision of that tribunal conclusive of all controversies with respect to the same. The proceedings in this case before that tribunal were in strict accordance with the requirements of the statute, and not only did appellee have reasonable notice thereof, but every reasonable opportunity to be heard and was heard from time to time before the order it now complains of was made by the board. It would be difficult to find a case in which the required 'due process of law' has been more fully met and complied with."

In *Reetz* v. *Michigan*, 188 U. S. 505, 23 S. Ct. 390, 47 L. Ed. 563, the following is quoted with approval from the opinion of Mr. Justice Matthews in *Hurtado* v. *California*, 110 U. S. 516, 4 S. Ct. 111, 292, 28 L. Ed. 232, after reviewing the authorities and discussing the elements of due process of law: "It follows that any legal proceeding enforced by public authority, whether sanctioned by age or custom, or merely devised in the

discretion of the legislative power, in the furtherance of the general public good, which regards and preserves those privileges of liberty and justice, must be held to be due process of law." See also *Murray* v. *Hoboken L. Co.*, 18 How. 272, 15 L. Ed. 372; *Ex parte Wall*, 107 U. S. 265, 27 L. Ed. 552, 2 Sup. Ct. 569.

The language just quoted in the *Reetz Case* is also quoted with approval by Judge Cardwell in the case in 109 Va., *supra*.

In *Twining* v. *New Jersey*, 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97, Mr. Justice Moody, speaking for the court, stated the law thus: "Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction (*Pennoyer* v. *Neff*, 95 U. S. 714, 733, 24 L. Ed. 565, 572; *Scott* v. *McNeal*, 154 U. S. 34, 14 S. Ct. 1108, 38 L. Ed. 896; *Old Wayne Mut. Life Association* v. *McDonough*, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345), and that there shall be notice and opportunity for hearing given the parties. *Hovey* v. *Elliott*, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215; *Roller* v. *Holly*, 176 U. S. 398, 20 S. Ct. 410, 44 L. Ed. 520, and see *Londoner* v. *Denver*, 210 U. S. 373, 28 S. Ct. 708, 52 L. Ed. 1103. Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law, established by civilized countries, this court has up to this time sustained all State laws, statutory or judicially declared, regulating procedure, evidence and methods of trial, and held them to be consistent with due process of law."

[2] There is no controversy as to the legality or regularity of the proceedings by which appellant was adjudged to be feeble-minded and committed to the State Colony.

The statute under review clearly vests the special board of directors of the State Colony for Epileptics and Feeble-Minded, after notice according to law, with jurisdiction to hear and determine the prayer of any petition filed by the Superintendent of the Colony for the sexual sterilization of an inmate thereof.

In the instant case, the proceeding was strictly in conformity with the statute. The Superintendent of the Colony, having first served a copy of the petition and a notice of the time and place it would be presented on the inmate, her guardian and her mother, her father being dead, presented to the special board of directors of the Colony his petition, stating the facts of the case and the grounds of his opinion, verified by his affidavit and praying that an order be entered by the board requiring him, or some other competent physician, to perform upon Carrie Buck the operation of salpingectomy. Upon a later day, fixed by the board, the board proceeded in the presence of the inmate, her guardian and her attorney, to hear and consider the petition and evidence offered in support of and against the petition, and entered its final order, from which the inmate appealed to the circuit court and subsequently to this court.

The act complies with the requirements of due process of law.

[3, 4] 2. The contention that the statute imposes cruel and unusual punishment cannot be sustained.

The act is not a penal statute. The purpose of the legislature was not to punish but to protect the class of socially inadequate citizens named therein from themselves, and to promote the welfare of society by mitigating race degeneracy and raising the average standard of intelligence of the people of the State.

The evidence shows that the operation, practically

speaking, is harmless and 100 per cent safe, and in most cases relieves the patient from further confinement in the Colony.

In *State* v. *Feilin*, 70 Wash. 65, 126 P. 75, 41 L. R. A. (N. C.) 418, Ann. Cas. 1914 B, 512, which was a criminal case, the court held that the operation of vasectomy was not a cruel punishment.

The constitutional prohibition against cruel and unusual punishment, Virginia Bill of Rights, section 9, has reference to such bodily punishments as involve torture and are inhumane and barbarous, and has no application to the case at bar. *Hart* v. *Commonwealth*, 131 Va. 741, 109 S. E. 582, and cases cited.

[5] 3. Does the statute deny to appellant and other inmates of the State Colony the equal protection of the law? This question must be answered in the negative.

It is not controverted that the State may, in proper cases, by due process of law, take into custody and deprive the insane, the feeble-minded and other defective citizens of the liberty which is otherwise guaranteed them by the Constitution.

[6] The right to enact such laws rests in the police power, which the States did not surrender when they entered the Federal Union, and the exercise of that power the Virginia Constitution provides shall never be abridged.

[7, 8] Where the police power conflicts with the Constitution, the latter is supreme, but the courts will not restrain the exercise of such power, except where the conflict is clear and plain.

In *Barbier* v. *Connolly*, 113 U. S. 27, 31, 5 S. Ct. 357, 359 (28 L. Ed. 923), Mr. Justice Field, referring to the effect of the fourteenth amendment to the Federal Constitution upon the exercise by a State of its police power, says: "But neither the amendment,

broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity." To the same effect is *Eubank* v. *Richmond*, 226 U. S. 142, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914 B, 192.

Under statutes providing for compulsory vaccination, a surgical operation is performed, as in the instant case, for the good of the individual and of society. Such statutes, although they applied to school children only, have been upheld.

In *Jacobson* v. *Massachusetts*, 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765, the court, in sustaining a compulsory vaccination statute, said: "According to settled principles, the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. *Gibbons* v. *Ogden*, 9 Wheat. (U. S.) 1, 203, 6 L. Ed. 23, 71; *Hannibal, etc., R. Co.* v. *Husen*, 95 U. S. 465, 470, 24 L. Ed. 527, 530; *Boston Beer Co.* v. *Massachusetts*, 97 U. S. 25, 24 L. Ed. 989; *New Orleans Gas Light Co.* v. *Louisiana Light & H. P. & Mfg. Co.*, 115 U. S. 650, 661, 6 S. Ct. 252, 29 L. Ed. 516, 520; *Lawton* v. *Steele*, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385. * * * The defendant insists that his liberty is invaded when the State subjects him to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and therefore hostile to the inherent right of every

freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person. But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good   *   *   *   ."

[9] As was said by this court in *Anthony v. Commonwealth*, 142 Va. 577, 128 S. E. 633: "The fourteenth amendment to the Constitution of the United States does not forbid the passage by the legislature of a law which applies to a class, only provided the classification is reasonable and not arbitrary, and applies alike to all persons similarly situated. Whether the classification is reasonable is a question primarily for the legislature. It is presumed to be necessary and reasonable, and the courts will not substitute their judgment for that of the legislature, unless it is clear that the legislature has not made the classification in good faith."

In *Hayes v. Missouri*, 120 U. S. 68, 7 S. Ct. 350, 30 L. Ed. 578, Mr. Justice Field, speaking for the court, said: "The fourteenth amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

The Supreme Court of the United States, while considering the effect of the equality clause of the

fourteenth amendment upon class legislation by the State, in *Lindsley* v. *National Carbonic Gas Co.,.* 220 U. S. 78, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912c, 160, said: "A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. * * When the classification * * is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. * * One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." See also 1 Dillon, Mun. Corp. (5th e d. sec. 146.

Disregarding other classes of mental defectives, upon whom the statute operates, the purpose of the act is to promote the welfare and prevent procreation by those who have been, or may hereafter be, judicially ascertained to be feeble-minded and are inmates of the State Colony for Epileptics and Feeble-Minded. The status of a feeble-minded person, who comes under the operation of the sterilization act, is not fixed until such patient, after judicial commitment to the Colony, shall have undergone expert observation for at least two months and been subjected to the Binet Simon measuring scale of intelligence, or some other approved test of mentality, and found to be feeble-minded. Code 1919, sec. 1083.

[10] Code, section 1078, designates those who have not been adjudged to be feeble-minded as persons "supposed to be feeble-minded." The sterilization act has no reference to the latter class except in so far as they may be legally ascertained to belong to the for-

mer and are committed to the Colony. It cannot be said, as contended, that the act divides a natural class of persons into two and arbitrarily provides different rules for the government of each. The two classes existed before the passage of the sterilization act. The female inmate, unlike the woman on the outside, was already deprived of the power of procreation by segregation, and must remain so confined until sterilized by nature, unless it is ascertained that her welfare and the welfare of society will be promoted by her sterilization under the act. There can be no discrimination against the inmates of the Colony, since the woman on the outside, if in fact feeble-minded, can, by the process of commitment and afterwards a sterilization hearing, be sterilized under the act.

Appellants rely upon *Smith* v. *Board of Examiners of Feeble-Minded, Epileptics, etc.*, 85 N. J. Law, 46, 88 Atl. 963. The New Jersey act provided for the sterilization of epileptics who were "inmates confined in the several charitable institutions in the counties and State." The court held the act unconstitutional because the statute arbitrarily created two classes and applied the statutory remedy to that one of the classes to which it had the least application, and therefore denied Smith, who was an inmate of a charitable institution, the equal protection of the laws. The right to sterilize did not, as in Virginia, depend upon whether the welfare of the patient would be promoted by the operation. For the reasons given in discussing the Virginia act, we decline to follow the New Jersey case.

The Indiana act was held invalid in *Williams* v. *Smith*, 190 Ind. 526, 131 N. E. 2, because it denied the appellee due process of law.

We have found no case involving similar statutes where the court has held that the State is without power

to enact such laws, provided it be exercised through a statute which affords due process of law and equal protection of the laws to those affected by it.

[11] For the foregoing reasons, we are of the opinion that the Virginia sterilization act is based upon a reasonable classification and is a valid enactment under the State and Federal Constitutions.

*Affirmed.*