No. 28,229.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff,* v. C. K. SCHAFFER, as Surgeon and Member of Staff of the Topeka State Hospital, *Defendant.*

(270 Pac. 604.)

Opinion filed October 6, 1928.

*William A. Smith,* attorney-general, and *Walter T. Griffin,* assistant attorney-general, for the plaintiff.

*Leon W. Lundblade,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus to compel the surgeon of the state hospital for the insane, located at Topeka, to perform an official duty prescribed by statute. The cause is submitted on a motion to quash the alternative writ. The alternative writ required defendant to perform the operation of vasectomy on Emil Luthi, or show cause why he should not do so. The motion to quash raises two questions: First, constitutionality of the sterilization statute; and second, regularity of proceedings under the statute.

It is contended the statute contravenes the fourteenth amendment to the constitution of the United States in that it violates a fundamental right of the inmate and hence exceeds the police power of the state. The supreme court of the United States has decided otherwise. (*Buck v. Bell,* 274 U. S. 200.)

It is contended the statute denies to the inmate equal protection of the law in that only those persons are to be sterilized who, in the judgment of the institution official, would procreate defective or feeble-minded children having criminal tendencies. If the supposed

discrimination is between those who are inmates of institutions and those who are not, the statute is valid. (*Buck v. Bell*, 274 U. S. 200.) If the supposed discrimination is between those who are inmates of institutions, there is none. Likelihood that an inmate possesses the baleful potency is necessarily a matter for the institution head to discover. If he believes it exists, he is required to bring the matter to the attention of the board of governors, who bring it to the attention of the board for the enforcement of the sterilization act, and the regulation applies to all inmates.

It is contended the statute breaches the constitutional guaranty of due process of law in that no appeal lies from the sterilization order made by the examining board, which is a nonjudicial body.

"Due process of law is not necessarily judicial process, nor is the right of appeal essential to due process of law." (*Reetz v. Michigan,* 188 U. S. 505.)

The headnote summarizes the doctrine of the opinion, and there are numerous cases to the same effect.

The result is the act does not violate the provisions of the constitution of the United States.

The interest of the individual invaded by the statute is of the highest order, and the invasion can be justified only as a necessary protection to some more important interest. Reducing this problem of reconciliation of personal liberty and governmental restraint to its lowest biological terms, the two functions indispensable to the continued existence of human life are nutrition and reproduction. Without nutrition, the individual dies; without reproduction, the race dies. Procreation of defective and feeble-minded children with criminal tendencies does not advantage, but patently disadvantages, the race. Reproduction turns adversary and thwarts the ultimate end and purpose of reproduction. The race may insure its own perpetuation and such progeny may be prevented in the interest of the higher general welfare.

The legislature provided a tribunal eminently competent to deal with the peculiar interests involved, and the procedure is adapted to the nature of the subject.

Before any order for sterilization can be made, there must be a hearing at a meeting of the board. The inmate, and his guardian if there be one, must have at least thirty days' notice of the meeting and hearing. At the hearing, the board must make the most searching inquiry, and the inmate may be represented by counsel and may introduce such evidence as he may desire.

The judicial tribunals are open to the inmate to test the validity of the law and the thirty-day period gives him reasonable time in which to institute proceedings to that end. If the jeopardy of a hearing may not be forestalled by action for an injunction, the declaratory judgment act may be utilized.

The court concludes the statute does not violate any provision of the constitution of the state of Kansas.

There is confusion in the statute relating to meetings of the board. It is evident the first draft of the statute provided for a meeting of the board on a fifteen-day call. At that meeting cases were to be investigated, findings returned, orders promulgated, and a record made, all without notice to inmates or opportunity for them to be heard. When the defect in procedure was noted, provision for the thirty-day notice was inserted without adjusting the dislocations which it caused. The legislative purpose is plain enough, and all provisions of the statute may be preserved by reading it in this way: A sterilization proceeding is initiated by a certificate and recommendation of the institution officer to the governing board, to be acted on within fifteen days; the chairman of the governing board calls a meeting of the board for enforcement of sterilization; the inmate is given thirty days' notice of the meeting; and, at the meeting, a hearing is had upon the question whether a sterilization order shall be issued. So considered, the terms of the statute are consistent with themselves and with the legislative intention. The proceedings in Luthi's case were consonant with this interpretation.

The motion to quash the alternative writ is denied, and a peremptory writ is allowed.