IN RE CLAYTON.
FRANK CLAYTON, APPELLANT, V. BOARD OF EXAMINERS OF
DEFECTIVES, APPELLEE.

FILED FEBRUARY 11, 1931. NO. 27562.

*McKillip & Barth*, for appellant.

*C. A. Sorensen, Attorney General*, and *Homer L. Kyle*,
contra.

Heard before Goss, C. J., Rose, Dean, Good, Eberly,
Day and Paine, JJ.

Dean, J.

Frank Clayton, an incompetent, is about 22 years of
age, and since November 16, 1920, he has been an inmate
of the Nebraska institution for the feeble-minded at Be-
atrice. This proceeding has been prosecuted in his behalf
from a judgment of the district court for Gage county,

wherein an order of the board of examiners of defectives was affirmed, directing that Clayton be sterilized, pursuant to the provisions of chapter 163, Laws 1929, now sections 83-1501 to 83-1510, Comp. St. 1929, as a condition prerequisite to his parole from the above named institution. Section 1, ch. 163, above cited, follows:

"Hereafter no feeble-minded or insane inmate or habitual criminal, physically capable of bearing or begetting offspring, shall be paroled or discharged from the institution for the feeble-minded or the hospitals for the insane, nor paroled from the penitentiary, reformatory, industrial home, industrial schools or other such state institutions, except as hereinafter provided, or by order of a court of competent jurisdiction."

Counsel for Clayton argue that the act is in derogation of the rights granted by the Fourteenth Amendment of the federal Constitution, and they also contend that the act is in violation of section 9, art. I of the Bill of Rights of the Nebraska Constitution, wherein it is provided that no "cruel and unusual punishment" shall be inflicted on one convicted of a crime.

The trial court made this pointed observation in respect of the act in question and its applicability to the facts disclosed by the record, namely:

"The only part thereof that could or should be held constitutional would be the part relating to the sterilization of feeble-minded persons, such as the subject in this case, and the court interprets the operation of sterlization, as used in this act, to mean the use of that form of sterlization known as vasectomy in the case of a male person and the form of sterilization known as salpingectomy in the case of a female person."

From a report of the board of examiners, it appears that Clayton was born in April, 1909; that he has two brothers and two sisters, and that one sister and a brother are likewise inmates of the same institution for feeble-minded at Beatrice. The report also discloses that, while Clayton appears to be physically normal, his mentality is such that he is not capable of progressing beyond the third grade

in school, and that his "intelligence quotient," at the time of the hearing before the board, was only 40 per cent., as compared to the average 90 per cent. or 110 per cent. of a normal person. It also appears that, while Clayton has been employed at various occupations while confined at the institution, his mentality is that of a child of six or seven years and that he is rated as a high grade imbecile.

The evidence of the examining physicians is that Clayton's feeble-minded condition is congenital, and not acquired, and that his offspring, if any there should be, would inherit about the same degree of mentality that is discovered in him. And from their evidence it appears that Clayton has himself reached his greatest capacity of mentality, and that, since his is an established case of hereditary feeble-mindedness, his condition would be transmitted in the germ plasm of his body to his offspring. In the opinion of the examining physicians, who compose the personnel of the board, the sterilization of Clayton is unquestionably advisable.

The operation of vasectomy in a male consists of rendering the individual incapable of begetting offspring. But such an operation does not affect the health of the person upon whom the operation is performed nor does it destroy sexual desire. One physician testified that he had performed more than 50 such operations on both men and women and that no change in the health of the individual was noticeable therefrom. And this witness also points out that the operation herein discussed comes within the class of minor operations and that it can be performed in 10 or 15 minutes by an efficient surgeon. He also testified that the operation does not at all incapacitate the patient and that, should the individual so operated upon at any future time desire it, an operation can be performed resexing him and making him potent as before. But he added that the castration of an individual is a major operation that renders the subject without desire for sexual intercourse. And he testified that the castration of an individual might have a serious detrimental effect upon the patient.

From the record before us, we conclude that the operation under discussion, as applied to a feeble-minded person, does not come within the meaning of the constitutional inhibition against cruel and unusual punishment.

Inasmuch as a feeble-minded person may have become so afflicted by reason, perhaps, of some unfortunate accident, it then, under the act in question, becomes the duty of the examining board to diligently inquire into and carefully review the status of each case to determine whether the individual so examined has an acquired or a congenital or hereditary form of feeble-mindedness and whether such individual shall be sterilized as a condition prerequisite to his release from a state institution for the feeble-minded.

*Buck v. Bell,* 143 Va. 310, is a case wherein the court held that the sterilization act is not repugnant to the provisions of the state and federal Constitutions. The court there said:

"The act is not a penal statute. The purpose of the legislature was not to punish but to protect the class of socially inadequate citizens named therein from themselves, and to promote the welfare of society by mitigating race degeneracy and raising the average standard of intelligence of the people of the state."

The *Buck* case was affirmed by the supreme court of the United States and the rule was there announced that the failure to extend the provision of the act to persons outside the institutions named did not render the act obnoxious. *Buck v. Bell,* 274 U. S. 200. In Massachusetts, the court held that it was within the police power of the state, and not in derogation of the rights of any person, under the Fourteenth Amendment of the federal Constitution, to enact a compulsory vaccination law for the prevention of smallpox. *Jacobson v. Massachusetts,* 197 U. S. 11. And, in Washington, the court there held, in the case of one convicted of rape, that vasectomy was not cruel punishment and that the operation could be painlessly performed in a few minutes. *State v. Feilen,* 70 Wash. 65. See, also, *Smith v. Wayne Probate Judge,* 231 Mich. 409; *In re Salloum,* 236 Mich. 478; *State v. Schaffer,* 126 Kan. 607.

In respect of the police power as pertaining to the affairs of the public generally, Mr. Justice Post said:

"The essential quality of the police power as a government agency is that it imposes upon persons and property burdens designed to promote the safety and welfare of the public at large." *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549.

The legislative act before us is in the interest of the public welfare in that its prime object is to prevent the procreation of mentally and physically abnormal human beings. We think it is within the police power of the state to provide for the sterilization of feeble-minded persons as a condition prerequisite to release from a state institution.

It is contended that the subject-matter of the act is not clearly expressed in the title. But, upon an examination of both the title and the act, we do not think the exception should be sustained. The judgment is right and it is therefore

AFFIRMED.

DAY, J., concurs in the result.