## DAVIS, Warden, v. WALTON.

No. 4809.   Decided April 9, 1929.   (276 P. 921.)

*Parley P. Jenson,* of Salt Lake City, for appellant.

*George P. Parker,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for respondent.

ELIAS HANSEN, J.

On November 5, 1925, Esau Walton was committed to the Utah state prison for the crime of robbery. He has been an inmate of that institution since the date of his commitment. In May 24, 1927, the state board of corrections

of the state of Utah ordered that Esau Walton be asexualized. He appealed from the order thus made to the district court of Salt Lake county. The district court affirmed the order of asexualization. He prosecutes this appeal, and here seeks a reversal of the order directing that he be asexualized. He urges that the order appealed from should be reversed, because (1) the law authorizing asexualization is unconstitutional; (2) the evidence does not support the order.

This proceeding is had under the provisions of Laws Utah 1925, c. 82, p. 159, and is entitled "An Act to Prevent the Procreation of Habitual Sexual Criminals, Idiots, Epileptics, Imbeciles and Insane and Providing Penalties for the Violation Thereof." The act provides for the asexualization of persons afflicted with habitual sexual criminal tendencies, insanity, idiocy, imbecility, feeble-mindedness, and epilepsy, who are confined in the Utah state hospital and sanatorium, the state industrial school, and the state prison. To secure an order authorizing the asexualization of any inmate in any of the mentioned state institutions, the act provides that the following procedure shall be followed: When the warden of the state prison or the superintendent of the state hospital and sanatorium or of the state industrial school shall be of the opinion that it is for the best interests of any inmate of the institution under his care and of society that such inmate should be sexually sterilized, he is directed to present a verified petition setting forth the facts and grounds for his belief to the board of control of the institution wherein the person to be asexualized is confined. A copy of the petition, together with a written notice of the time and place of hearing the petition, shall be served upon the inmate, his legal guardian, if he has such guardian, and his parents, if living, when the inmate is a minor. If the inmate has no legal guardian, the warden or superintendent, as the case may be, is directed to apply to the district court of the county wherein the institution is situated for the appointment of a guardian

for the inmate. A copy of the petition and notice must likewise be served upon the guardian so appointed. The hearing is had before the board in control of the institution in which the person sought to be asexualized is confined. The inmate, his guardian, and parents have a right to attend the hearing and be represented by counsel. Provision is made for an appeal to the district court from the order of the board, and likewise an appeal may be taken from the judgment of the district court to this court. When an appeal is taken from the order of the board to the district court, the records and files in the proceeding, including the evidence, which must be reduced to writing, are directed to be transmitted to the district court. The district court, in determining the appeal, may consider the record and proceedings had before the board and such other evidence as may be proper.

The act also contains these provisions:

"The said special board may deny the prayer of the said petition or if the said special board shall find that the said inmate is habitually sexually criminal, insane, idiotic, imbecile, feebleminded, or epileptic, and by the laws of heredity is the probable potential parent of socially inadequate offspring likewise afflicted, that the said inmate may be sexually sterilized or asexualized without detriment to his or her general health, and that the welfare of the inmate and of society will be promoted by such sterilization or asexualization the said special board may order the said superintendent or warden to perform or to have performed by some competent physician to be named in such order upon the said inmate, after not less than thirty days from the date of such order, the operation of vasectomy or asexualization if a male or salpingectomy or asexualization if a female." Section 2.

"Nothing in this Act shall be construed so as to prevent the medical or surgical treatment for sound therapeutic reasons of any person in this State, by a physician or surgeon licensed by this State, which treatment may incidentally involve the nullification or destruction of the reproductive functions." Section 6.

"Except as authorized by this Act, every person who shall perform, encourage, assist in or otherwise promote the performance of any of the operations described in this Act, for the purpose of destroying the power to procreate the human species, unless the same shall be a medical necessity, shall be guilty of a felony." Section 7.

The act contains other provisions, but they do not have any bearing on the questions presented for determination on this appeal.

Appellant contends that the law under which this proceeding is had is contrary to, and in violation of, article 1, § 9, of the Constitution of Utah, in that it provides for the infliction of cruel and unusual punishment. The provision of the Constitution referred to provides:

"Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor."

In support of appellant's contention in such respect the following cases are cited: *Davis* v. *Berry* (D. C.) 216 F. 413; *Mickle* v. *Henrichs* (D. C.) 262 F. 687; *Weems* v. *United States,* 217 U. S. 349, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; *Whitten* v. *State,* 47 Ga. 301. These cases support, or tend to support, appellant's contention where the operation of vasectomy or asexualization is adopted as a means of punishing a convicted criminal. In the case of *State* v. *Feilen,* 70 Wash. 65, 126 P. 75, 41 L. R. A. (N. S.) 418, Ann. Cas. 1914B, 512, a different conclusion is reached. It is there held that a law which provides that "whenever any person shall be adjudged guilty of carnal abuse of a female person under the age of ten years, or of rape, or shall be adjudged to be an habitual criminal, the court may, in addition to such other punishment or confinement as may be imposed, direct an operation to be performed upon such person, for the prevention of procreation," is not contrary to or in violation of the Constitution of the state of Washington which prohibited cruel punishment.

Appellant further contends that the law under review violates the Fourteenth Amendment to the Constitution of the United States, in that it denies him equal protection of

the law. The following cases may be said to support, or lend support, to this contention of appellant: *Smith* v. *Board of Examiners*, 85 N. J. Law, 46, 88 A. 963; *Osborn* v. *Thompson et al.*, 103 Misc. Rep. 23, 169 N. Y. S. 639; *Williams et al.* v. *Smith*, 190 Ind. 526, 131 N. E. 2; *Haynes* v. *Lapeer Circuit Judge*, 201 Mich. 138, 166 N. W. 938, L. R. A. 1918D, 233; *Smith* v. *Wayne Probate Judge*, 231 Mich. 409, 204 N. W. 140, 40 A. L. R. 515. In the case of *Buck* v. *Bell*, 143 Va. 310, 130 S. E. 516, 51 A. L. R. 855, which was appealed to the Supreme Court of the United States and there affirmed, 274 U. S. 200, 47 S. Ct. 584, 71 L. Ed. 1000, it is held that a law very similar to that under review did not violate the Fourteenth Amendment of the Constitution of the United States.

It will be observed that the provisions of the law involved in this proceeding require that before the operation of asexualization may be performed it must be made to appear (1) that the person to be operated upon is an inmate of either the state hospital or sanatorium, the state prison, or the state industrial school; (2) that the inmate is either habitually sexually criminal, insane, idiotic, imbecile, feebleminded, or epileptic; (3) that the inmate, by the law of heredity, is the probable potential parent of socially inadequate offspring likewise afflicted; (4) that the inmate may be sexually sterilized or asexualized without detriment to his or her general health; (5) that the welfare of the inmate will be promoted by sterilization or asexualization; (6) that the welfare of society will be promoted by sterilization or asexualization of the inmate. The act is in no sense a penal statute. The operation provided for is not a punishment for a crime. Its purposes are eugenic and therapeutic. Therefore cases dealing with laws that provide for asexualization as a punishment for crime are not applicable to the law here under consideration. It is clear, however, that one of the purposes of the law is eugenic. The Legislature, by the act, seeks to improve the race by preventing from being born persons who will probably become

defectives or criminals. It is urged that the act is class legislation; that to require the asexualization of those confined in public institutions without requiring similar treatment of persons of the same class who are not so confined offends against the equal protection of the law guaranteed by the Fourteenth Amendment of the Constitution of the United States. By the act here under review it will be observed that it is made a felony for any person to perform, encourage, assist in, or otherwise promote, the performance of any operation for the purpose of destroying the power to procreate the human species, except as in the act authorized, unless the same is a medical necessity. It is in effect urged, that, to require the asexualization of a specified class of persons who are inmates of a public institution, and hence may be segregated and prevented from procreation, and at the same time make it a felony to asexualize persons of the same class who are at liberty to procreate is an unreasonable and unwarranted exercise of the police power. A similar attack was made upon the law of Virginia without avail in the case of *Buck* v. *Bell,* supra. The Virginia law (Acts 1924, c. 394), under review in the case of *Buck* v. *Bell,* supra, is substantially the same as Laws Utah 1925, c. 82, except that the Virginia law does not contain any provision making it a crime to operate upon a person for the purpose of destroying the power to procreate the human species, as does our law. This difference between the two laws, however, cannot well be said to be of controlling importance. It is, of course, elementary that the Supreme Court of the United States is the arbiter to determine whether or not a law offends against the Constitution of the United States. We are of the opinion that the rule announced by that court in the case of *Buck* v. *Bell,* supra, is a complete answer to the claim here made by the appellant that the law under which this proceeding is had offends against the Fourteenth Amendment of the Constitution of the United States.

In considering the Utah law, the validity of which is here questioned, the fact should not be overlooked that, before

the operation of asexulization may be performed, it must be made to appear that the person to be operated upon will thereby be benefited.  If it be advisable to operate upon an inmate of a public institution for therapeutical purposes, it cannot well be contended that the operation should not be performed because such operation also has eugenic effects.  Some of the inmates of public institutions upon whom the act under review authorizes the performance of an operation for asexualization are incapable of giving consent.  Those capable of consent may refuse consent, even though their own welfare requires the treatment provided for in the act.  The state, of necessity, is charged with the proper care of inmates confined in public institutions.  If the welfare of an inmate of a public institution demands an operation, we know of no constitutional provision, either state or federal, that prohibits the legislative branch of the government from directing that such operation be performed without the consent or against the will of such inmate.  We are not unmindful of the fact that a law permitting the asexualization of inmates of public institutions is subject to absuse.  The same is true of other laws, but such fact alone does not render a law unconstitutional.  The procedure provided for in the law under review is well calculated to prevent abuse.  The inmate upon whom it is proposed to perform the operation is given ample opportunity to be heard before the operation may be performed.  The appellant must fail in his claim that Laws Utah 1925, c. 82, is unconstitutional.

Does the evidence support the order directing that appellant be asexualized?  An answer to this question necessitates a brief review of the evidence.  Walton is a negro. He was born in Georgia.  His father left his mother when he was an infant.  When a boy he served a term of 15 months in the reform school of Georgia for stealing silk shirts.  He completed the fourth grade in school.  He has not been married.  Before he was confined to the state prison he frequently had illicit intercourse, according to his testi-

mony, with women. His mother died in 1923. After the death of his mother, he came North. Before he was committed to the Utah state prison, he had been "picked up" a number of times, but had not been convicted of any crime. He was 19 years of age when he entered the Utah state prison. One of the guards at the state prison testified that on November 18, 1927, he saw the appellant with another inmate in a cell at the state prison. A blanket was hung over the window of the cell. Appellant and the inmate were both partly undressed. They had their pants down. Appellant's associate was lying on his stomach on a cot. The appellant was on top of him. When interrupted, the appellant's penis was erect. The guard further testified that appellant frequently acted lovingly towards other boys who were confined in the prison. Another inmate of the state prison testified that on a number of occasions the appellant has asked him to consent to commit the act of sodomy, but the other inmate had refused. The appellant testified in his own behalf. He denied that he had ever committed, attempted to commit, or asked any one to consent to the commission of, the act of sodomy. The inmate upon whom the prison guard testified the appellant was in the act of committing sodomy when disturbed also denied that they were so engaged, but he testified that the appellant talked to him about sodomy. No physician testified at the hearing which was had before the board of corrections.

When the case was appealed to the district court, Dr. S. H. Besley was sworn and testified. His testimony was to this effect: That the appellant was in good health, and that his general health would not be impaired by the performance of an operation of asexualization; that there are three recognized methods of performing the operation of asexualization upon a male person. One is to remove the testicles. One is to cut the nerves that control the penis. Cutting this nerve prevents the erection of the penis. The other is by vasectomy, which is accomplished by a severance of the sex germ-carrying ducts. According to Dr. Besley's testimony, neither

of the operations destroy the sexual desire. Vasectomy prevents procreation, but it does not affect either the desire or the ability to have sexual intercourse. The operation of severing the nerve which controls the penis makes it impossible for the person so treated to complete the act of sexual intercourse. The removal of the testicles after one has reached maturity does not destroy the desire or ability to have sexual intercourse until the lapse of 8 or 10 years after the operation is performed. Dr. Besley testified that he preferred either the operation of vasectomy or cutting of the nerve that controls the penis rather than that of castration. He further testified that either operation is a minor, and not a major, operation. The foregoing is substantially all of the evidence in the record before us.

Does this evidence justify a finding that "by the law of heredity Esau Walton is the probable potential parent of socially inadequate offspring likewise afflicted." and that his welfare will be promoted by his asexualization? We think not. As a general rule, members of judicial tribunals are not well informed as to the law of heredity. Even though they may be so informed, they may not take judicial notice that, if Esau Walton should have offspring, the same will be socially inadequate offspring likewise afflicted. Those who have made a thorough scientific study of the law of heredity are not in entire accord as to the operation of the so-called law, but doubtless persons so trained may lend valuable aid to judicial tribunals in determining the probable nature of the offspring of a given person. We doubt, however, that even the most ardent advocate of the immutability of the law of heredity would wish to determine the probable nature of the offspring of Esau Walton without more facts than appear in the record before us. Be that as it may, the record before us does not support the finding that "by the law of heredity Esau Walton is the probable potential parent of socially inadequate offspring likewise afflicted."

In what way or manner will the welfare of appellant be promoted by his asexualization? Has he any physical ail-

ment that will probably by cured by such an operation? Would such an operation relieve appellant from his abnormal sexual desire? If so, which of the three acknowledged means of asexualization is best calculated to accomplish such purpose? These and other pertinent questions that might be suggested are not answered by the record before us. If any effect is to be given to the expressed legislative intent, it must be made to appear that the welfare of Esau Walton must in some way be promoted before he can lawfully be asexualized.

The record before us does not justify the finding that the welfare of Esau Walton will be promoted by an operation of asexualization. In this connection it should be observed that the particular operation of asexualization that it is proposed shall be performed upon the appellant may well be of vital concern to him as well as to society. This being so, the appellant is entitled to be heard, not only upon the question of whether or not he shall be asexualized, but also upon what particular operation of asexualization, if any, shall be performed upon him. It therefore follows that the kind of operation, if any, that should be performed upon the appellant should be specified in the order. The order before us does not so specify.

From what has been said it follows that the order appealed from should be, and the same is, reversed. This cause is remanded to the board of corrections of the state of Utah for such further proceedings not inconsistent herewith as such board may deem proper.

CHERRY, C. J., and EPHRAIM HANSON and FOL-LAND, JJ., concur.

STRAUP, J.

I concur. I, however, think the order should be vacated for also additional reasons. In the petition for asexualization, it is alleged that the inmate "is afflicted with habitual sexual criminal tendencies, is a degenerate morally," and

that he at a stated time in the state prison where he was confined "committed the crime of sodomy on" another prison inmate, which is the only fact or circumstance alleged with respect to any sexual criminal offense or tendency, the other averments being merely conclusions, and not a statement of facts from which the conclusions may be deduced other than the alleged fact that the inmate committed the offense of sodomy. As revolting as the charged offense is, yet the averment as made does not satisfy the requirement of the statute that the inmate was "habitually sexually criminal." It may not be said that one is an "habitual drunkard" because he was found drunk only once; nor may it be said that one is an "habitual sexual criminal" because he was found to have committed but one sexual criminal offense.

Aside from this. As shown in the main opinion, the evidence respecting the charged offense of sodomy is in direct conflict, the only act or offense of sexual criminality charged. But no finding was made either by the board or by the district court as to whether the charged offense, or any sexually criminal act or offense, was or was not committed or attempted to be committed at any time by the inmate. The only finding made in such respect by the board and by the district court was merely in the language of the statute that the inmate "is habitually sexually criminal and by the laws of heredity is the probable potential parent of socially inadequate offspring likewise afflicted, and that the said inmate, Esau Walton, may be asexualized without detriment to his general health, and that the welfare of the said Esau Walton and society will be promoted by such asexualization." But no facts or circumstances of any kind were found from which such conclusions may or could be deduced. The rest of the statute on the subject might just as well have been copied in the findings. Averments and findings of such mere conclusions do not suffice. The statute defines or describes the matters involved in mere generic terms. In such case it is not sufficient in an information or petition to

merely charge or aver in the same generic terms as defined in the statute, but the species and the particulars must be stated. *State* v. *Topham*, 41 Utah 39, 123 P. 888. So, too, where findings are required, they also must state the material facts and particulars found, and not mere conclusions. That is just as elementary. The findings here are nothing. The only fact or particular of any sexual criminal act or offense alleged in the petition was left unfound. Thus the petition and findings are wholly insufficient to support the order of asexualization. The want of such fundamental requisites is not cured by evidence, even had there been sufficient evidence to justify the order, especially where, as here, the evidence with respect to the only charged sexual criminal act or offense was in direct conflict and the fact with respect thereto not found.

Further, and as stated in the main opinion, and with which I concur, the purpose of the statute authorizing asexualization is not for punishment, but for eugenic and therapeutical purposes. And, before an order of asexualization may properly be made, six requisites, as also stated in the main opinion, are essential. To justify the order, not only one or two but all of such requisites must be found to exist. It readily is seen that as to many of such requisites and conditions, to correctly and intelligently ascertain and determine the existence of them, requires knowledge of and familiarity with therapeutics and pathology as well as of other scientific teachings. It is quite apparent that a board of mere laymen, as this board was, before making an order of asexualization ought to have the aid and advice of therapeutists, pathologists, and of those trained and schooled in diagnosing and treating the maladies and disorders mentioned in the act and necessary to be found before an order of asexualization, ought to have the aid and advice of thera- by the record, the board had not, nor did it seek, any such aid or advice. It so unaided undertook to determine from what malady, disorder, or condition the inmate was suffering or was afflicted, whether or not the commission of the

charged sexual criminal offense, if committed or attempted to be committed, was due to mere present environments and surroundings, or to curable or incurable constitutional mental or physical disorders or perversions or abnormality. None of such matters was inquired into. That ought to have been done by those competent to do so. The board had before it a young healthy negro, about 19 years of age, confined in the institution, not for the commission of any sexual offense, but of robbery. We are not advised that the board had before it any previous history of the inmate as to the commission or his attempt to commit any sexual criminal offense, or as to tendencies so to do prior to his confinement in the state prison, except as testified to by him that he on different occasions had sexual intercourse with women. But all strong and healthy young men are not like Joseph, who fled from the flushed adulterous solicitations of Potiphar's wife, and because they are not is no reason why they should be castrated. If the inmate had committed the charged offense which neither the board nor the district court found was committed, and though it may be said such a revolting act shows such moral depravity as to justify his asexualization, as Sodom and its inhabitants because of such vice practiced were destroyed, yet that, as has been seen, is not the statute nor the purpose of it. It is not for punishment. Without finding whether the inmate had or had not committed the charged offense, without a history that he at any time had committed, or attempted to commit, such or any sexual criminal offense or act, the board, for the inmate's good, to prevent his becoming a parent, and to promote society, ordered him asexualized. What the district court had before it and did was not much better. It had before it what the board had but made no other or different findings than were made by the board. It, in addition, had the testimony of a physician who but testified that the inmate was in good health, that an operation of asexualization would not impair his general health, and explained the different methods of asexualization. So,

since the inmate had good health, and since an operation would not hurt him, the district court thus approved the board's order of asexualization. I think both the order of the board and of the district court should be annulled.