(No. 5680. May 20, 1931.)

STATE, Respondent, v. ALBERT TROUTMAN, Appellant.

[299 Pac. 668.]

674

T. A. Walters, for Appellant.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

McNAUGHTON, J.—This proceeding was instituted by the State Board of Eugenics under chapter 194, Session Laws of 1925, as amended by chapters 68 and 285, Session Laws of 1929. The act as amended is commonly referred to as the sterilization law. The Board of Eugenics, after hearing upon the facts presented, found the appellant afflicted with congenital feeble-mindedness, and recommended sterilization by vasectomy. The matter was heard in the district court where, after full hearing, judgment was entered sustaining the board's recommendations.

The case is here on appeal challenging mainly the constitutionality of the sterilization law.

Briefly, the act as amended creates the State Board of Eugenics composed of the State Public Health Adviser, and the superintendents of the Northern Idaho Sanitarium, the State School and Colony at Nampa, the Idaho Insane Asylum, the Idaho Industrial Training School and the warden of the penitentiary. It requires that said superintendent of each of the state institutions report quarterly to the Board of Eugenics all persons who are feeble-minded, insane, epileptic, habitual criminals, moral degenerates and

sexual perverts, who are, or in their opinion are likely to become, a menace to society.

The law requires the board to inquire into the innate traits, the mental and physical conditions, the personal records and family traits and histories of all persons so reported, and if after such examination a majority of said board are of opinion procreation by such person would produce a child having inherited tendency to feeble-mindedness, etc., or would probably become, a social menace or ward of the state, and there is no probability that the condition of such person so investigated will improve, the board shall make an order embodying its conclusions and specifying the type of sterilization as may be deemed best suited to the condition of such person. The findings and conclusions of the board shall be in writing. A copy of the order shall be served on the person affected unless insane or feeble-minded in which case it must be served upon his guardian or nearest known kin. If the person whose condition has been examined and his legal guardian or nearest known kin consents in writing to the operation advised it shall be performed under the direction of the State Board of Health Adviser.

If consent in writing is not given the Board of Eugenics shall file its findings, conclusions and order in the district court as a basis and, pleading upon which summons shall issue and trial be had as to whether the findings, conclusions and order of the board shall be affirmed by the court.

All the safeguards are afforded to the person concerned as fully as are afforded by a proceeding at law, with right of full review by appeal from the district court to the supreme court.

It is claimed this law is in conflict with sec. 1, art. 1, of the Constitution of Idaho, which guarantees life, liberty and the pursuit of happiness and safety, and the similar guarantee to citizens of the United States under the fourteenth amendment to the federal Constitution. The supreme court of the United States, considering a very similar sterilization law of Virginia, held the law was a

reasonable act protective of the general welfare within the police power of the state and not in contravention of such constitutional guaranties. (*Buck v. Bell,* 274 U. S. 200, 47 Sup. Ct. 584, 71 L. ed. 1000.) We are in accord with that view.

It is claimed the law violates sec. 6, art. 1, of the Idaho Constitution, prohibiting cruel and unusual punishment. The operation known as vasectomy is not usually considered cruel or inhuman, nor is it, under the Idaho law, inflicted as a punishment. (*Davis v. Walton,* 74 Utah, 80, 276 Pac. 921; *Osborn v. Thomson,* 103 Misc. Rep. 23, 169 N. Y. Supp. 638; *Smith v. Command,* 231 Mich. 409, 204 N. W. 140, 40 A. L. R. 515.)

It is claimed due process of law is not afforded. The proceeding is pursuant to summons duly issued and served, and every safeguard known to a regular and orderly hearing in a court with right of appeal is afforded. The act not only affords due process but unless written assent is procured requires a complete open judicial proceeding.

It is contended that the constitutional safeguards in a criminal prosecution are violated. We find this proceeding is in no sense a criminal prosecution.

It is further claimed that sec. 1, art. 11, segregating the departments of government is violated in that the law in question attempts to delegate judicial powers to an executive board.

The findings and conclusions of the board upon the investigation that it is required to make in behalf of the person whose condition, traits and family history are examined, are only recommendatory. The person concerned may or may not give written consent thereto. If written consent be not given then the Board of Eugenics must proceed in court where a purely judicial proceeding is had, with complete final determination of all rights in the courts. This is held not an infringement upon the province of the judicial department. (*McKnight v. Grant,* 13 Ida. 629, 121 Am. St. 287, 92 Pac. 989; *In re Hinkle,* 33 Ida. 605, 196 Pac. 1035.)

It is finally urged that the act is unconstitutional because discriminatory, in that it does not afford equal protection of the law to all. The sterilization law does not create a class nor discriminate against any within the class affected. In *State v. Horn,* 27 Ida. 782, 152 Pac. 275, the rule is announced as follows:

"This clause only requires that the same means and methods be applied impartially to all the constituents of a class so that the law may operate equally and uniformly upon all persons in similar circumstances. It merely requires that all persons subject to such legislation shall be treated alike under like circumstances."

Sterilization acts of other states have been held unconstitutional where applied only to inmates of institutions of the state. (*In re Thomson, supra; Smith v. Board of Examiners,* 85 N. J. L. 46, 88 Atl. 963.) But the courts of Virginia (*Buck v. Bell,* 143 Va. 310, 130 S. E. 516, 51 A. L. R. 855) and the supreme court of the United States (*Buck v. Bell,* 274 U. S. 200, 47 Sup. Ct. 584, 71 L. ed. 1000) have held that even that restriction did not render the law unconstitutional. The supreme court of the United States, commenting on this question, said:

"The law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow."

However, the act in question here applies to all coming within the class defined, whether in state institutions or not.

The principal argument on behalf of appellant is that the act is more theoretical than practical in its application and consequently not positively and safely within the police power of the state, and therefore it is claimed to be an unwarranted interference with personal liberty. In the main the argument harks back to the ancient exterminations of the physical defectives by certain governments. It is feared this law is an open wedge for such tyrannies. It is attempted to bolster this argument by a claim that modern scientists are not fully agreed on the law of hered-

ity, and that so-called "eugenics enthusiasts" are not agreed on how far the law should interfere with natural selection.

However, here we are administering a fixed and definite law, and are only concerned with that present law, not with what future legislatures may do. Nor are we concerned with what political enthusiasts may try to do.

The record before us and the recognized authorities on the scientific questions involved leave no doubt in our minds that heredity plays a controlling part in the blight of feeble-mindedness. If there be any natural right for natively mental defectives to beget children, that right must give way to the police power of the state in protecting the common welfare, so far as it can be protected, against this hereditary type of feeble-mindedness.

The record discloses the appellant is 26 years of age, physically normal, with normal sex desires. That he is mentally deficient in the degree of imbecility, having mentality only equivalent to that of a normal child of four or five years of age; that his father, mother, five brothers and six sisters are all feeble-minded and are or have been confined in various institutions; that his mother's sister is mother of seven children, three of whom are feeble-minded and committed to institutions; one of these is mother of ten more, all of whom are in various children's homes, and defective.

Appellant attended the public schools three months. In 1916 he was committed to the North Idaho Sanitarium, and in 1918 was transferred to the State School and Colony at Nampa.

We have examined the record carefully. The evidence is clear and convincing that the appellant is mentally deficient to the degree of imbecility, and that this condition is native, incurable and a controlling hereditary trait.

As we understand, vasectomy is a comparatively simple surgical operation. It is neither seriously dangerous nor painful, nor at all injurious to the physical health or happiness of the individual upon whom it is performed, but effective of its purpose. The law in behalf of the general

welfare demands it should be applied in this case. Judgment is affirmed.

Budge, Givens and Varian, JJ., and Babcock, D. J., concur.