## In re MAIN.

No. 23995.   Opinion Filed Feb. 14, 1933.

Richard H. Cloyd, for appellant.

J. Berry King, Atty. Gen., and Jesse L. Ballard, Asst. Atty. Gen., for appellee.

RILEY, C. J.   Samuel W. Main, by his guardian, Richard H. Cloyd, appeals from a judgment of the district court of Oklahoma county, affirming an order of the State Board of Public Affairs, made and entered May 27, 1932, authorizing and directing Dr. D. W. Griffin, Superintendent of the Central Oklahoma State Hospital of Norman, Oklahoma (a state hospital for insane), to have performed an operation of vasectomy upon Samuel W. Main, so as to render the said Samuel W. Main sexually sterile.

These proceedings were pursuant to the provisions of article 3, ch. 26, S. L. 1931, secs. 5039-44, Okla. Stats. 1931.

This act provides for sexual sterilization by vasectomy and salpingectomy of certain patients in state institutions for the insane. Its application is limited to inmates of state institutions who are "afflicted with hereditary forms of insanity that are recurrent, idiocy, imbecility, feeble-mindedness. or epilepsy," and to males under the age of 65 and females under the age of 47 years, and who are about to be discharged from such institutions. A condition precedent to the sterilization provided by the act is an affirmative finding, by the State Board of Public Affairs, based upon a hearing, that the inmate sought to be sexually sterilized, is afflicted with an hereditary form of insanity that is recurrent, or that he is an idiot, "imbecile, feeble-minded or epileptic, and by the laws of heredity is the probable potential parent of socially inadequate offspring likewise afflicted," and that the inmate may be sexually sterilized without detriment to his or her general health, and "that the welfare of the patient and of society will be promoted by such sterilization."

The procedure provided by the act permits the superintendent of such a state institution to petition the State Board of Public Affairs, "stating the facts of the case and the grounds of his opinion, verified by his affidavit to the best of his knowledge and belief, praying that an order be entered by said board requiring him to perform, or have performed by some competent physician to be designated by him in his said petition, or by said board in its order, upon the inmate of the institution named in such petition, the operation of vasectomy if upon a male, and of salpingectomy if upon a female." Stat. 1931, sec. 5040.

A copy of the petition is required to be served upon the inmate therein named; likewise written ten days' notice designating the time and place of hearing in the institution named in the petition is required to be served upon the inmate. A copy of the said petition and notice is required to be served upon the legal guardian of the inmate, and "If there be no such guardian or none such be known to said superintendent, then the said superintendent shall apply to the county court of the county where the domicile of said patient is, for the appointment of a guardian for said patient, which judge, by a proper order, shall appoint some suitable person to act as said guardian for said patient during and for the purpose of the proceedings under this act, to defend the rights and interests of said patient."

Provision is made, in event the patient is not an adult, but has known living parent or parents for service of a copy of the petition and notice upon them.

The State Board of Public Affairs is required by the act to see to it that the inmate has the privilege of attending the hearings "if desired by him or if requested by his guardian or parent. * * *"

The duty of preservation of all records and evidence offered at such hearings is enjoined upon the State Board of Public Affairs, and any party to the proceedings "shall have the right to be represented by counsel at such hearings."

After the State Board of Public Affairs has made its order for or against such sterilization, the superintendent, or the inmate, or his or her guardian, parent or next friend, may appeal "to the district court of the county where the domicile of said patient is." Stat. 1931, sec. 5041.

The district court in determining the appeal may "consider the record of such proceedings before the Board of Affairs, including the evidence, together with such other legal evidence as the court may consider pertinent and proper," and upon such appeal the said district court "may affirm, revise or reverse the order of said board appealed from, and may enter such order as it deem just and right and which it shall certify to the Board of Affairs."

An appeal is provided to the Supreme Court, and pending appeals the proceedings are stayed by the act.

This act (1931) is substantially the same as the Virginia Act (1924), which preceded it. The Virginia Act was sustained by the Supreme Court of the United States (May 2. 1927) in Buck v. Bell, 274 U. S. 200, 47 S. C. 584, 71 L. Ed. 1000. With reference to the Virginia Act, the Supreme Court of the United States, said:

"There can be no doubt that so far as procedure is concerned the rights of the patient are most carefully considered and as every step in this case was taken in scrupulous compliance with the statute and after months of observation, there is no doubt that in that respect the plaintiff in error has had due process at law."

In the case at bar it is established beyond dispute that Samuel W. Main was received at the Central Oklahoma State Hospital, located at Norman on January 4, 1932, upon commitment issued after a sanity hearing held on that date in the county court of Oklahoma county; that he is approximately 39 years of age and has a wife and four children; that his wife at the time of hearing was pregnant; that prior to his commitment to the named state institution, he had been committed to state institutions of like character located at Osawatomie, Kan., and Patton, Cal. He was afflicted with an hereditary form of insanity that is recurrent. He was about to be discharged from the Central Oklahoma State Hospital.

The procedure provided by the act liberally afforded the patient consideration and protection of his rights, and in the case at bar there has been a scrupulous compliance with the provisions of the act, so that appellee has been accorded due process of law.

The appellant contends on this appeal that the lower court erred in finding that an operation of vasectomy and the resultant sterilization of Main would be without detriment to his general health.

The objection goes to the weight rather than the admissibility of the evidence. It is, in effect, that the doctors who testified that such an operation on Main would be beneficial rather than detrimental to his general health had not performed such an operation, but learned and scientific men can virtually know things without having experienced them.

In the case of Buck v. Bell, 143 Va. 310, 130 S. E. 516, 51 A. L. R. 855, affirmed by the United States Supreme Court, it was said. with regard to evidence therein presented:

"These operations do not impair the general health, or affect the mental or moral status of the patient, or interfere with his or her sexual desires or enjoyment. They simply prevent reproduction. In the hands of a skilled surgeon they are 100 per cent. successful in results."

In Smith v. Command (Mich.) 204 N. W. 140. 40 A. L. R. 515, it was said:

"These operations are the least radical known to medical science."

And quoting from authorities on penal reform, it was said:

"This operation is indeed very simple and easy to perform. * * * It requires about three minutes time to perform the operation. and the subject returns to his work immediately. suffering no inconvenience, and is in no way impaired for the pursuit of life, liberty and happiness, but is effectively sterilized. * * * there is not only a diminution of the muscular and nervous fatigue. resulting from muscular exertion, but also a lessening of fatigue sensation and a decided increase of well being."

The record herein sustains the finding made, to wit, that an operation of vasectomy and the resultant sterilization of this patient would be without detriment to his general health.

It is next contended that the power conferred by this act upon the State Board of Public Affairs, an administrative body,

is judicial in character and therefore inhibited by the Constitution of this state, particularly section 1, art. 4, thereof.

The power so conferred does require the administrative board, when the matter is properly brought before it, to ascertain the facts, and to apply a proper order to the facts so found. The board hears and determines. Its duties are to some extent judicial or quasi judicial in character, yet a review and trial de novo is afforded before judicial tribunals. Our conclusion is that the powers so conferred upon this administrative board are not such that they may not properly exercise it.

By a long line of decisions this court has held that such powers (the exercise of which involves to some extent the exercise of judgment) may be bestowed for the primary application upon administrative officers.

Section 1, art. 7, Constitution of Oklahoma, provides that "The judicial power of this state shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law." County of Los Angeles v. Spencer, 126 Cal. 670, 59 P. 202, 77 Am. St. Rep. 217.

By reason of the review provided by the act (sec. 3) [Stat. 1931, sec. 5041] and a trial de novo, and a stay pending such review and trial within a judicial tribunal, the patient was not injuriously affected by the bestowal of quasi judicial powers upon an administrative board, and such being the case, he has no concern relative to the grant of these powers to such a board. Rea, Co. Clerk, v. State ex rel. Bd. of Com'rs of Lincoln County, 29 Okla. 708, 119 P. 235; Pioneer T. & T. Co. v. State, 40 Okla. 417, 138 P. 1033; Ins. Co. of N. A. v. Welch, 49 Okla. 620, 154 P. 48, Ann. Cas. 1918E, 471.

In Hopper v. Okla. Co., 43 Okla. 288, 143 P. 4, L. R. A. 1915B, 875, it was held that a provision for appeals to courts from tax assessments was not an improper delegation to the judiciary of legislative power as inhibited by section 1, art. 4, Const. of Okla. See London v. Day, 38 Okla. 428, 133 P. 181, and cases therein cited.

In the Hopper Case, supra, it was held that a board of county commissioners, an administrative agency, exercised both administrative and judicial functions and as such it was a board as contemplated by section 1, art. 7, Const. of Okla., wherein judicial power might be properly vested by

law. State Bar of Okla. v. McGhee, 148 Okla. 219, 298 P. 580.

It is next contended that the Sterilization Act violates section 9 of art. 2, Constitution of Oklahoma, which constitutional provision inhibits the infliction of cruel or unusual punishments.

The answer is that "There is no element of punishment involved in the sterilization of feeble-minded persons." Smith v. Command, supra. In this respect it is analogous to compulsory vaccination. Both are nonpunitive. It is therefore apparent that the constitutional inhibition against cruel or unusual punishment has no application to surgical treatment of feeble-minded persons, for the constitutional inhibition has reference to punishment after conviction of crimes. The record herein affords uncontradicted evidence to support the view of the trial court that vasectomy is not cruel, inhuman, unreasonable or oppressive. The act is not unconstitutional for the reasons contended. Osborn v. Thompson, 103 Misc. 23, 169 N. Y. Supp. 638, affirmed 185 App. Div. 902.

It is contended that the act violates section 7, art. 2, Constitution of Oklahoma, "in that it deprives a man of a part of his life, to wit, the ability to produce life" or procreate.

The constitutional inhibition provides:

"No person shall be deprived of life liberty, or property, without due process of law."

The phrase "without due process of law" is not without import in this connection. Therefore, assuming that the right to beget children is a natural and constitutional right, yet this right cannot be extended beyond the common welfare. Under the police power of the state and acting for the public good the state may impose reasonable restrictions upon the natural and constitutional rights of its citizens. This statutory provision for sterilization of feeble-minded inmates of public institutions constitutes a reasonable restriction upon such natural and constitutional rights of such persons. Smith v. Command, supra.

A like contention as to unconstitutionality of the act is based on the provisions of section 2, art. 2, Constitution of Oklahoma, which reads:

"All persons have the inherent right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry."

The contention is without merit.

In Ex parte Tindall, 102 Okla. 192, 229 P. 125, this court held:

"The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal and protection of the public interests."

The public welfare may call upon the best citizens for their lives." Buck v. Bell, supra.

"It would be strange if it could not call upon those who already sap the strength of the state for these lesser sacrifices, often not felt to be such by those concerned, in order to prevent our being swamped with incompetence. It is better for all the world, if instead of waiting to execute degenerate off-spring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind. The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes." Jacobson v. Massachusetts, 197 U. S. 11, 49 L. Ed. 643, 25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765.

The attack is upon the procedure and the substantive law. The first is adequate and liberal—the latter is an enactment of public policy within the scope of the power of the Legislature.

Judgment affirmed.

SWINDALL, ANDREWS. OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and McNEILL, absent.