SKINNER v. STATE ex rel. WILLIAMSON, Atty. Gen.

No. 28229. Feb. 18, 1941.

Rehearing Denied July 8, 1941.

*115 P. 2d 123.*

Claud Briggs and John Morrison, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

HURST, J. This action was instituted in the district court by the State of Oklahoma against Jack T. Skinner under the provisions of chapter 26, art. 1, S. L. 1935, 57 O. S. A. §§ 171-195, known as the "Oklahoma Habitual Criminal Sterilization Act."

The act was enacted pursuant to the police power of the state. It defines an habitual criminal to mean a person who has been convicted two or more times to final judgment of the commission of crimes amounting to felonies involving

moral turpitude, either in a court of competent jurisdiction of this state or any other state, and is thereafter convicted to final judgment in a court of competent jurisdiction of this state of the commission of a crime amounting to a felony involving moral turpitude and sentenced to serve a term of imprisonment in an Oklahoma Penitentiary or Reformatory or any other like penal institution now or hereafter established by the state. Excepted from the act are persons convicted of offenses arising out of the violation of the prohibitory laws, revenue acts, embezzlement, or political offenses.

The act provides that any person adjudged to be such an habitual criminal shall be rendered sexually sterile; if a male, by the operation of vasectomy; and, if a female, by the operation of salpingectomy.

The act provides that whenever it is brought to the attention of the Attorney General that any person has the status of an habitual criminal as defined by the act, the Attorney General shall commence a proceeding against such person by filing a petition in the district court in the county where he may be found and causing a summons to be issued by the clerk of the court. The act provides the form and contents of the petition and further that the defendant shall file an answer. It further provides that the cause shall be set for trial any time after the expiration of ten days from the day defendant's answer is filed.

As to the trial, the material provisions are as follows: "And for the trial of such cases, the practice and procedure shall be that now or hereafter provided for in the Code of Civil Procedure of this state, so far as the same may be applicable to and not inconsistent with the provisions of this act." Either party may demand that the questions of fact arising from the issues made by the pleadings be tried to a jury. "In event the court or jury, as the case may be, finds the defendant not to be an habitual criminal, as herein defined, the court shall render judgment denying the plaintiff's petition. But if the court or jury, as the case may be, finds the defendant to be such an habitual criminal, and, that said defendant may be rendered sexually sterile without detriment to his or her general health, then and in that event the court shall render judgment to the effect that said defendant be rendered sexually sterile."

The act further provides for an appeal to this court from the orders and judgment of the trial court. The act contains other provisions, but they have no bearing on the questions presented for determination on this appeal.

In the instant case a proceeding was filed against the defendant, Jack T. Skinner. The matter was submitted to a jury. Defendant, an inmate in the State Penitentiary, at McAlester, admitted that he had been convicted three times,—the first for stealing chickens, and his two subsequent convictions for robbery with firearms. The date of the last conviction was October 15, 1934, which was prior to the passage of the act. Under the provisions of the act, therefore, the only questions to be determined by the jury were (1) whether he was an habitual criminal as defined by the act, and (2) whether he might be rendered sexually sterile without detriment to his general health. Upon this question the parties introduced evidence, and the jury found that the general health of the defendant would not be impaired by the operation. Under the findings of the jury the court entered its judgment ordering that the defendant be made sexually sterile, from which judgment the defendant has appealed.

There is ample evidence to support the findings of the jury on the issues left to its determination, and the primary purpose of this appeal is to test the constitutionality of the act.

1. It is contended that the act inflicts cruel and unusual punishment in violation of section 9, art. 2, of the Oklahoma Constitution, and further that the act constitutes a bill of attainder and

is an ex post facto law, and is violative of section 15, art. 2, of the Oklahoma Constitution, and section 10, art. 1, of the Federal Constitution. These constitutional inhibitions have reference only to punishment for crime. 12 C. J. 1099, 1108; 11 Am. Jur. 1175, 1179. These contentions are, therefore, upon the premise that the act in question is a penal law, and that sterilization is inflicted as a punishment.

Where the operation of vasectomy is required or authorized in a purely penal statute as a punishment for crime, it has been held to constitute cruel and unusual punishment. See Davis v. Berry, 216 Fed. 413; and Mickle v. Hendrichs, 262 Fed. 687. However, in State v. Feilen, 70 Wash. 65, 126 P. 75, construing a strictly penal statute, the court held that the operation did not constitute cruel and unusual punishment. But whatever may be our views on that question, if the act in question is a purely penal one, we are inclined to think it would be invalid as to defendant as an ex post facto law in that at the time defendant committed his last offense and was convicted therefor, the act in question had not yet been passed.

On the other hand, the objections now being urged are not applicable where the operation of vasectomy is required as a eugenic measure, and not as a punishment. In such case it is said to be analogous to compulsory vaccination and is nonpunitive. In re Main, 162 Okla. 65, 19 P. 2d 153; Smith v. Command, Wayne County Probate Judge, 231 Mich. 409, 204 N. W. 140; State v. Troutman, 50 Idaho, 673, 299 P. 668; Davis v. Walton, 74 Utah, 80, 276 P. 921; Buck v. Bell, 143 Va. 310, 130 S. E. 516.

Therefore, the decisive question in connection with the determination of these constitutional objections is whether the act under consideration is a penal statute or a eugenic measure.

The rule of construction urged by defendant is that where the language of the statute is clear and unambiguous, there is no room for judicial construction and the words will be applied in their ordinary sense as they are usually understood. But there is nothing in the plain language of the act which classifies it as a penal one. In fact, the language is to the contrary. Therefore, we must look to the legislative intent as manifested from all parts of the act, keeping in mind that whenever reasonably possible, a statute must be so construed as to uphold its validity. 12 C. J. 787.

The act here provides that the procedure as in civil cases shall be applicable. The operation is not required as a part of any judgment of conviction or sentence. In fact, it is applicable to an habitual criminal within the meaning of the act, who may have served his sentence and been released. We think it was the intention of the Legislature that this act should be a eugenic measure to improve the safety and general welfare of the race by preventing from being born persons who will probably become criminals. Whether they have properly pursued that purpose will be hereinafter discussed, but we think it was the intention that this be in no sense a criminal prosecution.

Defendant argues that the failure to provide a hearing on the question of whether he will likely beget criminal children shows that the Legislature had no eugenic purpose in mind. But that does not negative a eugenic intention, because the omission of such a finding simply shows that the Legislature was satisfied that criminal tendencies in all such persons are inheritable. Defendant further argues that the fact that the act applies to person of any age and to persons sentenced to life imprisonment and does not provide for the operation at a time when they are about to be released, shows the intention to be penal rather than eugenic. But we do not think so. It is just as reasonable to presume that in passing a eugenic law, the Legislature was mindful of the fact that prisoners may escape, or be pardoned without affording an opportunity for the operation to be administered, and did not think it wise in connection with the purpose sought to be accomplished to

place age limits upon the law. We must bear in mind that we are not now speaking of the reasonableness of the classification but of the intention of the Legislature, and these matters do not deny a eugenic purpose.

Our view of this matter disposes of defendant's contention that he was not allowed five peremptory challenges and was required to testify against himself, which objections would be pertinent only in a criminal proceeding.

2. It is next contended that the act violates the due process clause of both the State and Federal Constitutions.

"Due process" has a dual significance, as it pertains to procedure and substantive law. As to procedure it means "notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a competent and impartial tribunal having jurisdiction of the cause." 12 Am. Jur. 267, § 573; 16 C. J. S. 1156. In substantive law, due process may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power. 6 R. C. L. 433-446; 11 Am. Jur. 998, 1073-1081; 16 C. J. S. 1156.

It is our information that sterilization laws have been passed in at least 27 states, ten of which deal with criminals of various classifications. Several of these acts have been declared valid in test cases, and a few declared unconstitutional for various reasons. See annotations, 40 A.L.R. 535; 51 A.L.R. 862; 87 A.L.R. 242. Thus it is seen that the sterilization of criminals as well as mental defectives as a eugenic measure may be effected under the police power of the state, provided the particular act fulfills the requirements of due process of law in its procedural aspects and the provisions thereof reasonably appear to bear a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.

The objection here made is that the act does not require a finding by the court or jury that by the laws of heredity the defendant is the probable potential parent of children with criminal tendencies, and it is argued that the defendant is thereby deprived of a full hearing. This objection really goes to the question of due process in relation to substantive law, rather than procedure. The question is whether the legislation under consideration is a reasonable exercise of the police power in providing that all habitual criminals as therein defined shall be sterilized, for if it is proper to enact such a provision, the procedural aspects are satisfied; that is, notice and a hearing on the issues of whether the particular defendant is such an habitual criminal and whether the operation will be detrimental to his health. If such provision is not proper, then the objection is that it is an unreasonable exercise of the police power, and not that the procedure is inadequate.

The determination of the reasonableness of the provisions of the act as an exercise of the police power is based upon the question of fact of whether habitual criminals as defined possess an inheritable tendency to crime which will be passed on to their children, if they are allowed to procreate. If that is true, then the act bears a real relation to the public welfare. If it is not true, the act would encroach upon the constitutional rights of individuals without justification. In every case, where the court is called upon to decide whether a particular statute is a proper exercise of the police power as against an improper infringement upon constitutional rights, the court must, before it can strike down the act, decide that the existing facts do not justify the conclusion of the law-making body that the law which they have enacted bears a real relation to health, safety, or public welfare. In a measure the court exercises a supervisory fact-finding power when it declares that an act is or is not a reasonable exercise of the police power. But that supervision has very well defined limitations. The discretion of the Legislature is very great in the exercise of the police power. 11 Am. Jur. 1081; 6 R. C. L. 240. As

long as the act does not infringe upon the inherent rights of life, liberty, and property, the legislative determination as to the necessity of the regulation and the method employed is conclusive on the courts. 11 Am. Jur. 1083; 6 R. C. L. 241. Where the attempted public measure affects constitutional rights, the legislative determination of the facts is not conclusive, and it is then that it is the duty of the courts to determine whether the proposed regulation is a proper exercise of the police power. 11 Am. Jur. 1084; 6 R. C. L. 242, 243. But all the presumptions of validity surrounding legislation apply in this situation, and it is presumed "that the Legislature has carefully investigated and determined that the interests of the public require such legislation." 11 Am. Jur. 1089. "It has been frequently stated, in cases where the questions are presented for judicial review, that in order to sustain legislation under the police power, the courts must be able to see that its operation tends in some degree to prevent some offense or evil or to preserve public health, morals, safety, and welfare...." 11 Am. Jur. 1087.

We must, therefore, assume that the Legislature had before it statistics, scientific works, and information from which it found as a fact that habitual criminals are more likely than not to beget children of like criminal tendencies who will probably become a burden upon society. 6 R. C. L. 111; 11 Am. Jur. 820. Based upon such a presumptive finding of fact, the legislation was enacted. That determination by the co-ordinate branch of the government having the duty to formulate the public policy of the state must be given great weight by the courts. Every presumption must be indulged in favor of the existence of facts which the Legislature assumed and acted upon, and we are not at liberty to strike down the act unless we can say beyond a reasonable doubt that the Legislature was clearly in error, and was wholly unwarranted and acted arbitrarily, in assuming or determining such facts. 6 R. C. L. 114; 11 Am. Jur. 794, 822; 12 C. J. 798; 16

C. J. S. 280. The authorities go so far as to say that "if a state of facts which would justify the legislation can reasonably be conceived to exist, the court must presume that it did exist when the law was passed." Cuthbertson v. Union Pacific Coal Co., 50 Wyo. 441, 62 P. 2d 311. See, also, 11 Am. Jur. 822. We all know that heredity plays some part in our mental, moral, and physical make-up, but no one knows exactly what part it does play. We know that insanity and idiocy are hereditary and have sustained a law providing for the sterilization of such persons. In re Main, 162 Okla. 65, 19 P. 2d 153. Some authorities are of the opinion that habitual criminals have a trait of insanity and that such trait is hereditary. In passing the law under consideration the Legislature probably assumed this to be a fact. If such is a fact, the welfare of society dictates that the state shall, in the exercise of its police power, prevent such persons from reproducing their kind.

We think no one would doubt that this court should sustain the present law if it required a third finding to the effect that the accused is the potential parent of offspring with inherited criminal tendencies. But in the very nature of the case, testimony by expert witnesses on this question would be highly speculative and a finding by a jury or court, based upon such testimony, would likewise be speculative. The opinion of the experts would probably be based, in part at least, upon data that was available to, and considered by, the Legislature at the time of enacting the law. If a court or jury can make a finding of fact based upon such speculative evidence, we see no reason why the Legislature cannot find or assume facts, based upon the same speculative evidence, as a basis for the exercise of the police power.

In Standard Oil Co. v. Marysville, 279 U. S. 582, 49 S. Ct. 430, in a unanimous opinion written by Mr. Justice Stone, it is said:

"We may not test in the balances of judicial review the weight and suffi-

ciency of the facts to sustain the conclusion of the legislative body."

And it was said by Mr. Justice Holmes, in Otis & Gassman v. Parker, 187 U. S. 606, 23 S. Ct. 168:

"* * * While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view, as well as for possible peculiar conditions which this court can know but imperfectly, if at all. * * *"

See, also, Rast v. VanDeman & L. Co., 240 U. S. 342, 36 S. Ct. 370, L. R. A. 1917A, p. 421.

True, the laws providing for the sterilization of insane persons and habitual criminals usually provide that there be a finding that the accused is a probable potential parent of offspring that will be insane or criminal, but the fact that other statutes make such provision does not mean that they must do so. For some reason, not known to us and with which we should not concern ourselves, our Legislature thought such provision not necessary or proper. It may be because it thought such a finding could not be based upon satisfactory proof. The Legislature should be allowed some latitude on this question.

We find nothing in the record that justifies a finding by this court that the Legislature was clearly and beyond a reasonable doubt in error in assuming facts justifying the act as a proper exercise of the police power. Without such a showing, or unless the legislative determination is plainly contrary to those matters of common knowledge of which the court may properly take judicial notice, we should not declare the act unconstitutional. Our knowledge on the subject, which is not a knowledge of law but of science and observation, is not superior to that of members of the Legislature. The courts should be extremely careful not to trench on legislative discretion and power, and thereby violate section 1, art. 4, of the State Constitution, providing for division of the powers of government among the three co-ordinate branches and that "neither shall exercise the powers properly belonging to either of the others." We must remember that the right to veto or repeal laws is not vested in the courts, and they are not concerned with the wisdom of the law.

3. Finally, the defendant contends that the act denies him equal protection of the law in violation of the State and Federal Constitutions. The test of equal protection of the law is dependent upon the reasonableness of the classification. 6 R. C. L. 373. The act here applies to all habitual criminals as therein defined, whether incarcerated in an institution or not. From what we have said above, it appears that the classification is reasonable, and, therefore, there is no arbitrary or unlawful discrimination.

Judgment affirmed.

WELCH, C. J., and RILEY, BAYLESS, and ARNOLD, JJ., concur. CORN, V. C. J., and OSBORN, GIBSON, and DAVISON, JJ., dissent.

---

OSBORN, J. (dissenting). Due to the importance of the constitutional question determined by the majority opinion herein, I deem it proper in dissenting thereto to express briefly my reasons for such dissent.

That the field of legislation covered by the act comes within the proper sphere of legislative action is, I think, no longer open to question. Buck v. Bell, 274 U. S. 200, 71 L. Ed. 1000, 47 S. Ct. 584; 40 A. L. R. 535; 51 A. L. R. 862; 87 A. L. R. 242; 126 A. L. R. 535. I concede that the Legislature can lawfully provide that one fact shall be prima facie evidence of another fact, if there is some rational connection between them. 12 Am. Jur., p. 248, sec. 552, of Const. Law; 11 Am. Jur., pp. 919, 920, sec. 213, Const. Law. Such legislation must bear some real and substantial relation to the public health, safety, morals, or some other phase of general

welfare. Atlantic Coast Line Ry. Co. v. City of Goldsboro, 232 U. S. 548, 58 L. Ed. 721, 34 S. Ct. 364; Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 50 L. Ed. 596, 26 S. Ct. 341; Liggett Co. v. Baldridge, 278 U. S. 105, 73 L. Ed. 204, 49 S. Ct. 57; 16 C. J. S., Constitutional Law, § 195.

While great weight will be given to the finding by the Legislature of the necessity and propriety of the legislation and the courts will not declare same invalid unless it can be said beyond reasonable doubt that the legislative determination is erroneous, such rule does not apply in all its force when the inherent constitutional rights of citizens are involved. In 11 Am. Jur. 1084, § 305, it is said:

"Legislative determination is conclusive upon the courts only within constitutional limits, which leaves open for judicial inquiry all questions as to the actual effect of attempted police measures upon constitutional rights. The reasons for the rule are patent. Since the judicial branch of the government ascertains the validity of all legislation as measured by the federal and state Constitutions and since the police power is subordinate to the organic law, the broad scope of the power does not place every regulation touching it within legislative competence, because of the power of the courts to determine whether legislative action conflicts with the organic law or is arbitrary and unreasonable and therefore void. Hence, a determination by the Legislature as to what is a proper exercise of the police power is not final and conclusive, but is subject to the supervision of the courts."

In the act under consideration the Legislature has, in my judgment, restricted the power of the court in its hearing of applications filed thereunder to unreasonable, illegal and, I may add, unwise lengths, in that it provides: "But if the court or jury, as the case may be, find the defendant to be such an habitual criminal, and, that said defendant may be rendered sexually sterile without detriment to his or her general health, then and in that event the court shall render judgment to the effect that said defendant be rendered sexually sterile."

The right to beget children is one of the highest natural and inherent rights, protected by section 7, art. 2, of the Constitution of the state and the 14th Amendment to the Constitution of the United States relating to due process. The hearing provided by the act does not provide for inquiry into any possible criminal traits of the person informed against and requires no finding as to whether or not such traits are transmittable to his posterity, nor whether by accident, disease, age, infirmity, or for other reasons such person is reasonably capable of producing offspring, either criminal, degenerate, or imbecile, against which the Legislature may legitimately seek to protect society. Herein the act under consideration substantially differs from the act under consideration in Re Main, 162 Okla. 65, 19 P. 2d 153, constitutionality of which was upheld by this court with the writer hereof concurring.

Thus it is my view that the act under consideration deprives persons of constitutional rights without due process of law and offends against the State and Federal Constitutions.

For these reasons, I respectfully dissent.

CORN, V. C. J., and GIBSON and DAVISON, JJ., concur herein.